## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LAURA MARIE QUINTO,

              Plaintiff,

v.                                          Case No. 8:24-cv-787-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

              Defendant.

_____

## **OPINION AND ORDER**[2]

## **I.   Status**

Laura Marie Quinto ("Plaintiff") is appealing the Commissioner of the

Social Security Administration's ("SSA('s)") final decision denying her claim for

disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the

result of Sjogren's syndrome, Hashimoto's thyroid disease, elevated liver

function tests (LFTs), essential hypertension, celiac disease, arthritis, swelling

and pain in her joints, extreme fatigue, double vision, problems with sleeping,

---

[1]     Frank Bisignano was recently confirmed as the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

alopecia, hypothyroidism, anxiety, and depression. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed June 27, 2024, at 73, 82, 192, 224. Plaintiff protectively filed an application for DIB on July 17, 2021, alleging a disability onset date of July 16, 2021.[3] Tr. at 179-80. The application was denied initially, Tr. at 72, 73-80, 92-95, and upon reconsideration, Tr. at 81, 82-90, 103-05.[4]

On August 24, 2023, an Administrative Law Judge ("ALJ") held a hearing,[5] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 45-69. On September 14, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 30-39.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted additional medical evidence and a brief authored by her representative. See Tr. at 2, 5-6 (Appeals Council exhibit list and order), 9-26 (medical evidence), 173-74 (request for review), 291-94 (brief). On March 15, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4,

---

[3]     Although actually completed on July 19, 2021, see Tr. at 179, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as July 17, 2021, see, e.g., Tr. at 73, 82.

[4]     Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5]     The hearing was held via videoconference with Plaintiff's consent. See Tr. at 47-48, 149-50, 167-68.

thereby making the ALJ's Decision the final decision of the Commissioner. On March 30, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in "failing to provide a function-by-function assessment of all of [Plaintiff's] severe medical impairments, specifically, the functional effects of fatigue as required under SSR 96-8p and HALLEX I-2-8-20." Plaintiff's Brief in Support of Complaint (Doc. No. 10; "Pl.'s Br."), filed July 3, 2024, at 2 (capitalization omitted); see id. at 4-8. On July 31, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 32-39. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 16, 2021, the alleged onset date." Tr. at 32 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease (DDD), carpal tunnel syndrome (CTS), Sjogren's syndrome, Sicca syndrome, Hashimoto's thyroiditis, Hypertension, Obesity, Celiac disease, Inflammatory arthritis, Headaches, Angina pectoris, Hyperlipidemia, Depression, Anxiety, and Cognitive disorder." Tr. at 32 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

[C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except can lift 10 pounds; can stand and walk 6 hours per day; can sit 6 hours per day; can never climb ladders, ropes, and scaffolds; can occasionally climb ramp and stairs, balance, stoop, kneel, and crouch; can never crawl; can frequently reach, handle, finger, and feel; can perform work which does not require exposure to temperature extremes, humidity, vibration, hazardous machinery and heights; can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in routine work settings or duties; can perform work which does not require a specific production rate or pace, such as assembly lines; can have occasional interaction with the public, coworkers, and supervisors; and can maintain attention and concentration for 2 hours at a time, but does require the standard morning, lunch, and afternoon breaks.

Tr. at 34 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as an "administrative clerk." Tr. at 38 (some emphasis and citation omitted). The ALJ then proceeded to step five. After considering Plaintiff's age ("50 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 38 (emphasis and citations omitted), such as "Shirt presser," "Checker I," and

- 5 -

"Routing Clerk," Tr. at 39 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from July 16, 2021, through the date of th[e D]ecision." Tr. at 39 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is

supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in failing to provide a function-by-function assessment of her fatigue. Pl.'s Mem. at 2, 4-8. According to Plaintiff, although fatigue is "the primary reason she claims to be disabled" and is a prominent symptom from which she suffers, <u>id.</u> at 5, "the ALJ's [D]ecision provides virtually no comment or findings on [Plaintiff's] allegations concerning the effect of fatigue on her ability to tolerate her usual work," <u>id.</u> at 6. Responding, Defendant contends the ALJ properly considered all of Plaintiff's alleged symptoms, including fatigue, and made findings supported by substantial evidence. Def.'s Mem. at 6-18.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's

subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." <u>Holt</u>, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); <u>see</u> <u>Raper v. Comm'r of Soc. Sec.</u>, 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." <u>Raper</u>, 89 F.4th at 1277 (citation omitted); <u>see</u> 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. <u>Wilson</u>, 284 F.3d at 1225; <u>see also</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Marbury v. Sullivan</u>, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," SSR 96-8P, 1996 WL 374184 at *3. It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Plaintiff testified that fatigue was one of the reasons she felt she was unable to work.[7] Tr. at 54, 58. The ALJ specifically recognized Plaintiff's testimony that "fatigue and dizziness plagued her," Tr. at 34, before finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 35.

In arguing that the ALJ erred, Plaintiff cites consistent reports of fatigue in the administrative transcript.[8] Pl.'s Mem. at 5 (citations omitted); see Tr. at 347 (July 1, 2021 note documenting "at the end of the day she is very tired and run down all the time"), 442 (Plaintiff alleging to a psychological examiner on October 25, 2021 that her inability to work is "due to extreme fatigue" among other issues), 511 (consultative physical examiner on December 20, 2021 noting Plaintiff's "chronic complaints of . . . fatigue"), 562 (October 4, 2022 note

---

[7]    Plaintiff alleges that "[s]he testified that her medications for [her] conditions also produce side effects causing or exacerbating her fatigue." Pl.'s Mem. at 5 (citing Tr. at 58). Her testimony was not so strong. When asked if her medications "have any side effects that affect [her] functional abilities," Plaintiff responded, "Yes, they do make—can make you dizzy, tired, it depends on what pill." Tr. at 58. In response, her representative brought her back to her earlier allegation of fatigue and asked, "Can you be more specific and tell us about that and how that affects you?" Tr. at 58. Plaintiff responded, "It – I feel like I'm dragging myself around. For someone who used to be so energetic, it's really taken a toll, it's depressing. I just, I – it's robbed me of my motivation." Tr. at 58.

[8]    Plaintiff cited some duplicates. See Pl.'s Mem. at 5 (citations omitted). Duplicates are not cited here.

documenting complaints of "persistent fatigue . . . all day" and that "gabapentin makes her sleepy and hence she cannot take it on a regular basis"), 585, 578, 573 (September 1, 2021, December 14, 2021, and March 14, 2022 notes stating Plaintiff "[f]eels tired all the time"), 617-18 (Plaintiff stating to a consultative psychological examiner in February 2023 that she "experiences extreme fatigue," "sleeps often due to the fatigue," and was currently "exhausted"), 742 (December 1, 2022 note documenting "ongoing chronic . . . fatigue"), 762-63 (November 4, 2022 note that Plaintiff feels "exhausted"), 783-84 (February 23, 2022 note that Plaintiff reported fatigue among her symptoms), 968 (Plaintiff statin to a consultative examiner on June 1, 2023 that her "[w]alking is limited to 5 minutes due to general fatigue as well as hip discomfort and other arthritic complaints"). But, the ALJ recognized that Plaintiff during the relevant period "endorsed . . . fatigue" and found "some support in the record for [her] allegations." Tr. at 36.

The ALJ, in finding that the claimed disabling level of Plaintiff's fatigue was not entirely consistent with the evidence, discussed the medical evidence in detail, Tr. at 35-37, including reported improvement in Plaintiff's condition with medication, as well as "diet, exercise, and some physical therapy." Tr. at 36. Overall, the ALJ's Decision makes clear that the fatigue allegation was adequately considered and rejected as a basis for a claimed disability. This Court cannot reweigh the evidence or start anew, so the ALJ's findings in this

regard may not be disturbed. Having only partially accepted Plaintiff's claimed levels of fatigue, the ALJ was under no obligation to assess any more restrictions than he did in Plaintiff's RFC. See Tr. at 34 (containing Plaintiff's RFC). The ALJ did not err.[9]

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 11, 2025.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

---

[9]        Plaintiff mentions that the ALJ "discounted the report of [consultative examiner] Beamon" in which Dr. Beamon "reported [Plaintiff's] several diagnoses of auto-immune disorders." Pl.'s Mem. at 7 (citing Tr. at 970). The presence of such disorders was not disputed by the ALJ. See Tr. at 32 (finding severe impairments). Moreover, although noting Plaintiff's complaint of "fatigue," Tr. at 968, Dr. Beamon did not opine on the effect, if any, of the alleged fatigue except to state that Plaintiff "showed no reproducible fatigue with repetitive muscle testing." Tr. at 969, 958-70. Plaintiff suggests the ALJ should have asked Dr. Beamon to "clarify his opinion respecting [Plaintiff's] work limitations," Pl.'s Mem. at 8 (citation omitted), but the ALJ was under no such obligation in this case.

kaw
Copies:
Counsel of Record